ORDERED.

**Dated:  February 01, 2016**

Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

TAYLOR, BEAN & WHITAKER MORTGAGE                    Case No.: 3:09-bk-7047-JAF
CORPORATION,

      Debtor.

_____/

NEIL F. LURIA, as Trustee to the TAYLOR, BEAN, &
WHITAKER PLAN TRUST

      Plaintiff,

v.                                                                                      Adv. Pro. No. 3:11-ap-455-JAF

C & S BUILDING & RENOVATIONS, INC.

      Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This proceeding came before the Court upon Motion to Set Aside Default and Default

Judgment (the "Motion to Set Aside") (Doc. 28), Plaintiff's Response in Opposition to [the

Motion to Set Aside] (Doc. 29), Defendant's Reply to Plaintiff's Response to [the Motion to Set Aside] (Doc 32), and Plaintiff's Sur-Reply in Opposition to [the Motion to Set Aside] (Doc. 34). The Court conducted an evidentiary hearing on the matter on December 9, 2015.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On August 19, 2011, Plaintiff commenced this adversary proceeding by filing Complaint to Avoid Fraudulent Transfers and to Recover Property Transferred Pursuant to 11 U.S.C. § 550 (the "Complaint").  On September 1, 2011, Plaintiff filed a certificate of service indicating that it had served Defendant with the summons and a copy of the Complaint on August 29, 2011 by regular, first class United States mail as follows: C & S Building & Renovations, Inc. c/o Jeff Struck, Registered Agent, 5000 Boile Highway, Suite 4, Pensacola, FL 32505 (the "Boile Highway Address"). (Def.'s Ex. 1).  As a result of Defendant's failure to respond to the Complaint, on January 27, 2012, the Clerk entered a Default against Defendant.  On October 8, 2012, Plaintiff filed Motion for Entry of Judgment by Default against Defendant (the "Motion for Default").  (Def.'s Ex. 4).  The certificate of service indicates the Motion for Default was served upon Defendant at the Boile Highway Address and also at 708 N. New Warrington Road, Pensacola, FL, 32506 (the "Warrington Road Address").  (Id.)  On October 10, 2012, the Court entered Order Granting Plaintiff's Motion for Entry of Judgment by Default Against Defendant (the "Order Granting Motion for Default").  (Pl.'s Ex. 6).  While the Order Granting Motion for Default indicated a copy of the Order was to be furnished to Defendant at the Boile Highway Address and the Warrington Road Address, the Certificate of Notice indicates that the Order was served by first class mail upon Defendant at the Boile Highway Address and at 708 N. New

Arrington Road, Pensacola, FL, 32506 (the "Arrington Road Address"). (Pl.'s Ex. 7). On October 19, 2012, the Court entered Judgment by Default against Defendant (the "Default Judgment"). (Pl.'s Ex. 8). The Certificate of Notice indicates that the Default Judgment was served by first class mail upon Defendant at the Boile Highway Address and the Warrington Road Address. (Pl.'s Ex. 9). On May 19, 2014, this adversary proceeding was closed.

Jeff Struck, the owner and sole director of Defendant, testified that Defendant's mailing address is 5000 Mobile Highway, Suite 4, Pensacola, FL 32505 (the "Mobile Highway Address"). Mr. Struck testified that the Warrington Road Address was Defendant's former business address which Defendant stopped using in December of 2009. In January of 2010, Mr. Struck changed Defendant's address with the United States Postal Service from the Warrington Road Address to the Mobile Highway Address. Mr. Struck testified that it is his understanding that the United States Postal Service forwards mail for one year.

The Mobile Highway address is occupied by Defendant's C.P.A. who collects all of Defendant's mail and places it in a bin on a shelf. Mr. Struck retrieves his mail approximately every two weeks unless his accountant informs him an important piece of mail has been received, in which event he retrieves it the next day. There is no variance in this procedure, which has been in effect since 2007. Mr. Struck testified that he has never had an issue receiving mail using this procedure.

Mr. Struck testified that he did not receive a copy of the summons and Complaint, a copy of the Motion for Default, a copy of the Order Granting Motion for Default, or a copy of the Default Judgment. According to Mr. Struck, he first became aware of this adversary proceeding in October, 2014 when a debt collector contacted him. Mr. Struck did some follow up research, became aware of the Taylor, Bean, and Whitaker bankruptcy case, and realized a lien had been

filed against Defendant.  Mr. Struck then contacted the Court and was informed of the Default Judgment.  Mr. Struck wrote a letter to the Court, which was received on October 27, 2014, indicating that he had become aware of a lien against Defendant and that all papers regarding the adversary proceeding had been sent to the Boile Highway Address.  (Def.'s Ex. 7).  The letter indicated that any money paid by TBW to Defendant was "legitimate money paid for honest services rendered."  (Id.)  The closing paragraph of the letter stated "I'm not sure how this all works, I just know I need to get this lien dismissed by the court in order to keep any money safe that my customers give me to perform work."  (Id.)  Because the adversary proceeding was closed, the Court took no action on the letter.  However, Mr. Struck testified that he contacted the Clerk's office about a week after he wrote the letter and was told everything would be taken care of, which he believed to mean that the lien against Defendant would be released.

On November 17, 2014, Plaintiff filed Motion to Strike Letter filed by Pro Se Individual on Behalf of Corporate Defendant (the "Motion to Strike").  The Motion to Strike sought to have the Court strike the October 27, 2014 letter, which Plaintiff understood to be an answer to the Complaint, because it was filed by a non-attorney on behalf of a corporation in violation of Local Rule 1074-1.  Because the adversary proceeding was closed, the Court took no action on the Motion to Strike.

During November and December 2014, Mr. Struck and Plaintiff's attorney exchanged a series of e-mails regarding the Default Judgment.  At some point during the exchange, Mr. Struck learned that Plaintiff's attorney had filed the Motion to Strike.  (Pl.'s Ex. 1, at 42).  Mr. Struck sent an e-mail to Plaintiff's attorney dated January 12, 2015 requesting that Plaintiff's attorney send him a copy of the Motion to Strike by e-mail.  (Id.; Pl.'s Ex. 13).  Mr. Struck did not receive a response to the e-mail or any further correspondence from the Court.

According to Mr. Struck, he believed everything was taken care of and went about his business as usual until the middle of July, 2015, when he attempted to sell a house he had purchased and remodeled.  Because the lien resulting from the Default Judgment was recorded in the official records, the closing could not occur.  At that point, Mr. Struck contacted the Court and determined the Default Judgment had not been set aside and was still in effect.

 On July 23, 2015, Mr. Struck filed Motion to Reopen (Pl.'s Ex. 2), Motion to Set Aside, and Request to Expedite (Pl.'s Ex. 3) seeking to have the adversary reopened, all of which were stricken by the Court by Orders dated July 30, 2015 (the "Orders Striking") because they were filed by a non-attorney on behalf of a corporation in violation of Local Rule 1074-1.  The Certificates of Notice as to the Orders Striking (Pl.'s Exs. 10, 11, and 12) indicate that the Orders Striking were sent by first class mail to Jeffrey Struck, dba C & S Building and Renovations. The Certificates of Notice also indicate "BYPASSED RECIPIENTS (undeliverable, * duplicate)" followed by [Defendant] and [Plaintiff].

On August 7, 2015, attorney Taylor King, on behalf of Defendant, filed Motion to Reopen Adversary Proceeding and the Motion to Set Aside.  The Motions were set for a preliminary hearing and then set for an evidentiary hearing on December 9, 2015.

Carmen Cruz, a paralegal employed by Plaintiff's attorney, testified that she filed and served the Complaint.  Ms. Cruz testified that neither the Complaint nor the Motion for Default were returned to her as undelivered by the United States Postal Service.

### Conclusions of Law

Defendant seeks to have the Default and Default judgment set aside pursuant to Rule 60(b)(1), 60(b)(4), and 60(b)(6) of the Federal Rules of Civil Procedure.  A motion under Rule 60(b)(1) must be brought no more than a year after the entry of the judgment.  Fed.R.Civ.P.

60(b)(1).  Because the Motion to Set Aside was filed more than a year after the entry of the

Default Judgment, it is time barred and the Default Judgment cannot be set aside on this basis.

Next, Defendant seeks relief under Rule 60(b)(4) which provides that a court may set

aside a judgment if the judgment is void.  "Generally, where service of process is insufficient,

the court has no power to render judgment and the judgment is void."  In re Worldwide Web

Sys., Inc., 328 F.3d 1291, 1299 (11th Cir. 2003).  "A judgment can be set aside for voidness

[pursuant to Rule 60(b)(4)] where the court lacked jurisdiction or where the movant was denied

due process.  This includes lack of personal jurisdiction and defective due process for failure to

effect proper service."  Stansell v. Revolutionary Armed Forces of Columbia, 771 F.3d 713, 736-

737 (11th Cir. 2014) (internal citation omitted).  A party seeking relief pursuant to Rule 60(b)(4)

is not required to show it has a meritorious defense as a precondition to relief.  See Peralta v.

Heights Med. Center, Inc., 485 U.S. 80, 86-87 (1988).[1]  While a motion pursuant to Rule

60(b)(4) "is not subject to a typical laches analysis," Stansell, 771 F.3d at 737, "it is not error for

a [trial] court to deny a Rule 60(b)(4) motion where the party seeking relief 'knowingly sat on

his rights' and 'does not give an acceptable reason for this delay.'"  Gill v. Wells, 610 F. App'x

809, 812 (11th Cir. 2015) quoting Stansell, 771 F.3d at 736-38.

The Court must first determine whether Defendant was properly served with the

Complaint.  There is a rebuttable presumption that a properly mailed item is received by the

addressee.  Hagner v. United States, 285 U.S. 427, 430 (1932).  "The 'presumption of receipt'

arises upon proof that the item was properly addressed, had sufficient postage, and was deposited

in the mail."  Konst v. East Coast Ry. Co., 71 F.3d 850, 851 (11th Cir. 1996).  "To be properly

addressed, mail does not have to be accurate in all respects … [But], there is a limit to the

---

[1] That having been said, the Court presumes that Defendant would not have sought the involvement of the Court and its attendant resources if Defendant did not have a meritorious defense.

acceptable degree of inaccuracy because the more inaccurate the address on a piece of mail is, the lower the probability of its delivery in the course of business of the Postal Service." Dugan v. Leather Bella, LLC (In re Rhodes, Inc.), 2008 WL 7866896 at * 7 (Bankr. N.D. Ga. May 12, 2008).    Courts have varied in their approach to what constitutes an acceptable degree of inaccuracy. See in re Longarndner & Assocs., Inc., 855 F.2d 455, 460 (7th Cir. 1988) (holding that weakened presumption applied when zip code omitted); Ross v. La Rouche Indus., Inc. (In re La Rouche Indus., Inc.), 307 B.R. 774, 778 (D. Del. 2004) (holding no presumption applied when street address incorrectly listed as Drive Hicks Boulevard rather than Dr. Hicks Boulevard); Randbre Corp. v. Ladney (In re Randbre Corp.), 66 B.R. 482, 485-486 (Bankr. S.D.N.Y. 1986) (holding no presumption applied when mail incorrectly addressed to 660 East 15 Mile Rd. instead of 6600 East 15 Mile Road).

Plaintiff points out that the Boile Highway Address contained a typographical error in the name of the street but contained the correct city, state, and zip code and that "it is often  the case that mail that has a typo gets delivered."  Plaintiff also points out that the Certificates of Notice issued by the Bankruptcy Noticing Center as to the Order Granting Motion for Default Judgment (Pl.'s Ex. 7) and as to the Default Judgment (Pl.'s Ex. 9) do not indicate that those documents were returned to the Court as undeliverable but that the Certificates of Notice as to the Orders Striking (Pl.'s Exs. 10, 11, and 12) indicate that those documents were returned as undeliverable.

The Court finds that Plaintiff's use of the Boile Highway Address rather than the Mobile Highway exceeds an acceptable degree of inaccuracy.  The service of the Complaint, the Motion for Default, the Order Granting Motion for Default, and the Default Judgment at the Boile Highway Address does not create a presumption of receipt.  While the Motion for Default and the Default Judgment were also served at the Warrington Road Address, Mr. Struck testified that

he changed that address to the Mobile Highway Address in January of 2010, almost three years

before the documents were served.  No evidence was introduced to rebut Mr. Struck's contention

that the United States Postal Service forwards mail for a year.  Moreover, the Order Granting

Motion for Default was served upon Defendant at the Arrington Road Address, a misspelling of

the Warrington Road Address.  The Court finds that the service of the Motion for Default and the

Default Judgment at the Warrington Road Address and the service of the Order Granting Motion

for Default at the Arrington Road Address does not create a presumption of receipt.

Plaintiff misunderstands the meaning of the term "undeliverable" on a Bankruptcy

Noticing Center certificate of notice.  That notation on such a notice means only that the Court

was not provided with an address to which to send the document and the document was therefore

not mailed to the entity listed.  The notation does not mean that the document was returned to the

Court by the United States Postal Service as undeliverable.  Conversely, the absence of such a

notation on a certificate of notice does not mean that the document was not returned to the Court

by the United States Postal Service as undeliverable.  The Court finds that Defendant did not

receive any of the improperly served documents.

The Court turns to the issue of whether Defendant knowingly sat on its rights and did not

give an acceptable reason for the delay.  The Court finds that to the extent a time limitation in

filing the Motion to Set Aside Default is invoked, Defendant did not knowingly sit on its rights

and Mr. Struck offered an acceptable reason for the delay between the time he became aware of

the Default Judgment and the filing of the Motion to Set Aside.  Almost immediately upon

becoming aware of the Default Judgment, Mr. Struck sent a letter to the Court seeking relief.

Approximately a week later, Mr. Struck called the Court inquiring as to whether the letter was

received.  At the conclusion of that telephone call, Mr. Struck, believed, albeit mistakenly, that

the matter was resolved.   While Mr. Struck exchanged a number of e-mails with Plaintiff's counsel during November and December 2014 by which Plaintiff's counsel informed him of Plaintiff's position that the Default Judgment was valid, Mr. Struck testified that he instead relied on his conversation with the Clerk and opted to believe that the matter "was taken care of."[2] Additionally, he received no response from Plaintiff to his e-mail requesting a copy of the Motion to Strike.   On July 23, 2015, within a week or so of realizing that the Default Judgment had not been set aside, Mr. Struck filed Motion to Reopen, Motion to Set Aside, and Request to Expedite.   Within a week of the July 30, 2015 entry of the Orders Striking, Defendant retained an attorney and filed the Motion to Set Aside.   Upon a review of the chronology of events and Mr. Struck's explanation, the Court finds that Defendant satisfied its burden of proving that the Default and Default Judgment should be set aside.[3]   The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

---

[2] The Court makes no determination as to whether Mr. Struck's belief was reasonable, only that it was in fact his belief.

[3] Having found that the Default and Default Judgment are due to be set aside under Rule 60(b)(4), the Court need not address whether Defendant is entitled to relief from the Default and Default Judgment pursuant to paragraph (b)(6) of Rule 60.   However, it is clear that paragraph (b)(6) [potentially] applies only to cases that do not fall within paragraphs 1-5 of Rule 60(b).   United States v. Real Prop. and Residence, 920 F.2d 788, 791 (11th Cir. 1991).   In other words, grounds assertable but failing to meet the standards of Rule 60(b)(1)-(5) may not be asserted under Rule 60(b)(6). 12 Moore's Federal Practice, § 60.48[2] at 60-184 (3d ed. 2002).   The reason offered for relief from the Default and Default Judgment is that the Complaint was not properly served upon Defendant and the Default Judgment is therefore void.   Because that basis for relief is assertable under Rule 60(b)(4), it would not form a basis for relief under Rule 60(b)(6).